# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOBBY RAY ANGLIN, | Case No. 1:16-cv-00566-SKO |
| Plaintiff, | |
| v. | ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1] | |
| Defendant. | (Doc. 1) |

## I. INTRODUCTION

On April 21, 2016, Plaintiff Bobby Ray Anglin ("Plaintiff") filed a complaint under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for disability insurance benefits ("DIB"). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of the Social Security Administration. *See* https://www.ssa.gov/agency/commissioner.html (last visited by the court on February 27, 2017). She is therefore substituted as the defendant in this action. *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in his official capacity, be the proper defendant").

Magistrate Judge.[2]

## II. BACKGROUND

On July 19, 2012, Plaintiff filed a claim for DIB payments alleging he became disabled on January 1, 2012, due to "Stage 2 Kidney Failure," "Type 2 Diabetes," "Gout," "High Blood Pressure," and "High Cholesterol." (Administrative Record ("AR") 24, 17, 188–89.) Plaintiff was born on May 16, 1965, and was 46 years old on the alleged disability onset date. (AR 29, 43.) The highest level of education Plaintiff completed was the eleventh grade. (AR 46.) From 1994 to January 1, 2012, Plaintiff was self-employed as a handyman. (AR 208.)

### A. Relevant Medical Evidence[3]

Plaintiff complained of tiredness and weakness in his legs and lower leg pain in September 2012. (AR 472.) On September 21, 2012, state agency consultative examiner Robert Wagner, M.D., evaluated Plaintiff. (AR 267–71.) Plaintiff reported that he cooks, cleans, drives, shops, performs his own activities of daily living without assistance, and does some yard work and yard mowing for exercise. (AR 268.) Dr. Wagner observed that Plaintiff "was easily able to get up and out of the chair in the waiting room, walk at a brisk pace back to the exam room without assistance, and sat comfortably throughout the entire history taking." (AR 269.) Plaintiff "was easily able to get on and off the exam table, easily able to bend over at the waist and take shows off and put them back on without difficulty." (AR 269.) Plaintiff had normal station and gait, and his straight leg test was negative both seated and supine. (AR 269–70.) Plaintiff had 5/5 motor strength, muscle bulk, and tone in the bilateral upper and lower extremities, including grip strength bilaterally. (AR 270.) Dr. Wagner noted that Plaintiff had "some very mild left ankle tenderness," but "[n]o real swelling" and "[n]o redness or heat in any joints on the body." (AR 270.)

Dr. Wagner diagnosed Plaintiff with diabetes, chronic kidney disease, and gout. (AR 271.) Based on his objective findings on the exam, Dr. Wagner concluded that Plaintiff is limited to standing and walking up to six hours, and lifting and carrying 50 pounds occasionally and 25

---

[2] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 4,6.)
[3] As Plaintiff's assertion of error is limited to the ALJ's RFC findings, only evidence relevant to that argument is set forth below.

pounds frequently. (AR 271.) Dr. Wagner found no limitations on sitting, postural activities, manipulative activities, and workplace environmental activities. (AR 271.)

In October 2012, Plaintiff developed right shoulder pain as a result of fixing a faucet. (AR 487.) On examination, no swelling, deformity, effusion, or redness was noted, but Plaintiff's shoulder joints were not able to be examined due to pain. (AR 487.) Plaintiff was provided an arm sling and prescribed pain medication, and was instructed to call to schedule physical therapy. (AR 487.) He refused a steroid injection. (AR 487.) Plaintiff reported improved lower leg pain following stopping Fenofibrate and Simvastatin. (AR 487.)

On October 5, 2012, a Disability Determinations Service non-examining consultant, P. Frye, M.D., reviewed the record and analyzed the case. (AR 91–97.) Dr. Frye concluded that Plaintiff could lift and carry 50 pounds occasionally and 25 pounds frequently, and stand, walk, and sit 6 hours in an 8-hour workday, with no other limitations. (AR 96–97.) Dr. Frye's conclusion that Plaintiff could perform a medium range of work was affirmed by Disability Determinations Service non-examining consultant J. Frankel, M.D., on April 10, 2013. (AR 110.) In November 2013, Plaintiff lacerated his left finger while using a skill saw. (AR 398.) The bleeding was controlled, and Plaintiff's blood test showed his liver/kidney function was stable. (AR 428.)

On May 2, 2014, Plaintiff was seen by neurologist Madhav Suri, M.D. (AR 508–09.) Dr. Suri evaluated Plaintiff for lumbosacral radiculopathy, diabetic polyneuropathy, possible carpal tunnel syndrome, and possible diabetic complications. (AR 508.) Plaintiff described "back pain radicular suggestive of a left greater than right L5-S1 lumbosacral radiculopathy," with "some neck pain" suggestive of "underlying cervical spondylosis." (AR 508.)

On May 7, 2014, Dr. Suri saw Plaintiff for "bilateral hand numbness, tingling, pain, and parathesis, possible entrapment neuropathy median [], left leg pain, burning, with numbness and tingling as well, possible lumbosacral radiculopathy [], [and] peripheral neuropathy in the lower extremities." (AR 505.) Dr. Suri performed Electromyography ("EMG") and a Nerve Conduction Study ("NCS") on Plaintiff, and noted "[a]bnormal nerve conduction studies indicative of bilateral median nerve entrapment at the wrists" and "[a]bnormal EMG to both

lower extremities indicating of a left L5 lumbosacral radiculopathy." (AR 507.)

On May 20, 2014, a MRI of Plaintiff's lumbar spine was performed, which, according to reviewing radiologist Bruce Ginier, M.D., revealed "marked bilateral foraminal narrowing" at L5-S1, which was "greater on the left, with effacement of fat around the exiting nerve roots, suggesting compression." (AR 511–12.) "Mild grade I retrolisthesis at this level" was also seen and "[m]arked facet hypertrophy" was noted. (AR 511–12.)

On July 31, 2014, Plaintiff presented to neurosurgeon Ali Najafi, M.D., with complaints of low back pain, lower extremity pain, and parethesias. (AR 529.) Plaintiff reported that he is unable to stand without help from an assisted walking device, such as a cane, and has difficulty standing upright without flexion in his hips and leaning forward, due to "severe back and left leg pain upon standing." (AR 529.) Plaintiff stated the leg pain is "constant" and "radiates to the posterior buttock, thigh, and calf with associated numbness and tingling." (AR 529.) Plaintiff reported that the symptoms are "worse with prolonged sitting, standing, and heavy lifting, and are alleviated with lying supine; however, the pain is still present in a moderate to severe level." (AR 529.)

Upon examination, Dr. Najafi noted Plaintiff had 5/5 strength for left dorsiflexors, extensor halluces longi, iliopsis, quadriceps, and plantar flexors, with no atrophy noted. (AR 530.) There was diminished perception of soft touch in bilateral lateral thighs, anterior shin, and feet. (AR 530.) Plaintiff's deep tendon reflexes were 1+ for quadriceps and Achilles jerk bilaterally. (AR 530.) Dr. Najafi observed that Plaintiff had difficulty standing from a seated position, was unable to stand on toes and heels, and had diminished tandem gait and heel/toe walk. (AR 530.) Plaintiff had tenderness to palpation over the lumbosacral spine, and a positive straight leg test on the left side at 30 degrees. Dr. Najafi's impression was that Plaintiff had spondylolisthesis at L5-S1 and bilateral nerve root impingement due to spondylolisthesis and microinstability. (AR 530.) Dr. Najafi concluded that Plaintiff had "maximized conservative medical therapy including pain medication management, physical therapy and epidural steroid injections," and recommended a transforaminal lumbar interbody fusion at L5-S1. (AR 531.) Plaintiff indicated he wished to "continue with the surgical recommendation" (AR 531).

4

**B.     Administrative Proceedings**

Plaintiff filed an application for DIB payments on July 19, 2012, alleging he became disabled on January 1, 2012. (AR 24, 17, 188–89.) The Social Security Administration denied Plaintiff's applications for benefits initially on October 9, 2012, and again on reconsideration on April 12, 2013. (AR 119–22, 128–32.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 134–42.) On May 8, 2014, Plaintiff appeared with counsel and testified before an ALJ as to his alleged disabling conditions. (AR 36–81.) Plaintiff's wife also testified at the hearing. (AR 81–82.)

A Vocational Expert ("VE") testified at the hearing that Plaintiff had past work as a building repairer, Dictionary of Operational Titles (DOT) code 899.381-010, which was medium exertional work, with a specific vocational preparation (SVP)[4] of 7. (AR 83–84.) The ALJ asked the VE to consider a person of Plaintiff's age, education, and with his past job. (AR 84.) The VE was also to assume this person is limited to performing work at the medium exertional level, and is limited to only frequent postural maneuvering such as stooping, crouching, and crawling. (AR 84.) The VE testified that such a person could perform Plaintiff's past relevant work per the DOT, but not as performed. (AR 84.) The ALJ asked a follow up question regarding the first hypothetical worker who was limited to performing work at the light exertional level, could perform postural maneuvers on an occasional basis, could not climb ladders, ropes or scaffolds, and could perform fingering and handling on a frequent basis. (AR 84–85.) The VE testified that this individual could not perform Plaintiff's past work, but could perform other work in the national economy as a palletizer, DOT code 929.687-054, light exertion level and SVP 2; garment sorter, DOT code 222.687-014, light exertion level and SVP 2; and package operator, DOT code 920.685-082, light exertion level and SVP 2. (AR 85.)

The ALJ then proposed a third hypothetical, assuming the same individual in the second hypothetical but the individual was limited to performing at the sedentary level, with all other

---
[4] Specific vocational preparation, as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991). Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation). *Id.*

limitations remaining the same. (AR 85–86.) The VE testified that such a person could perform work as a document preparer, DOT code 249.587-018, sedentary exertion level and SVP 2; ampoule sealer, DOT code 559.687-014, sedentary exertion level and SVP 2; and weight tester of paper, DOT code 539.485-010, sedentary exertion level and SVP 2. (AR 86.) When asked by the ALJ to assume that same person would require frequent, unscheduled breaks of up to four a day lasting 10 to 15 minutes, the VE testified that there would be no work such person could perform. (AR 86.)

Upon Plaintiff's counsel's request, the ALJ agreed to leave the record open for three weeks following the hearing to allow Plaintiff time to submit additional medical records. (AR 87.)

**C.  The ALJ's Decision**

In a decision dated August 1, 2014, the ALJ found that Plaintiff was not disabled. (AR 24–35.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 416.920. (AR 26–31.) The ALJ decided that Plaintiff has not engaged in substantial gainful activity since January 1, 2012, the alleged onset date (step 1). (AR 26.) The ALJ found that Plaintiff had the severe impairments of (1) degenerative disc disease, (2) carpal tunnel syndrome, (3) chronic kidney disease, (4) diabetes mellitus, (5) gout, and (6) hypertension (step 2). (AR 26.) However, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step 3). (AR 26–27.) The ALJ determined that Plaintiff had the residual functional capacity ("RFC")[5]

> to perform light work as defined in 20 CFR 404.1567(b) except he can only occasionally stoop, crouch, and crawl. [Plaintiff] cannot climb ladders, ropes, or scaffolds. He can handle and finger frequently.

(AR 27.)

---

[5] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. Social Security Ruling 96-8p. The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

6

The ALJ determined that Plaintiff had no past relevant work (step 4), but that Plaintiff was not disabled because, given his RFC, he could perform a significant number of other jobs in the local and national economies, specifically palletizer, garments order, and package operator (step 5). (AR 29–31.) In reaching his conclusions, the ALJ also determined that Plaintiff's subjective complaints were not fully credible. (AR 27, 29.)

**D.  Appeals Council Decision**

Plaintiff sought review of this decision before the Appeals Council. (AR 19–20.) Plaintiff submitted records from his July 31, 2014 examination by Dr. Najafi and his October 13, 2014 lumbar spine surgery (AR 5–11) to the Appeals Council, and requested that the matter be remanded so that the ALJ could consider the new records (AR 8). The Appeals Council incorporated the July 31, 2014 exhibit into the record. (AR 5.) On December 17, 2008, the Appeals Council denied review, finding that the additional medical information "does not provide a basis for changing the Administrative Law Judge's decision." (AR 1–7.) With respect to the October 2014 records, which were not incorporated into the record (*see* AR 5), the Appeals Council noted that the information "was from a later time" and therefore "does not affect the decision about whether you were disabled on or before August 1, 2014," the date of the ALJ's decision. (AR 2.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.981.

### III.  SCOPE OF REVIEW

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence" means "such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

## IV. APPLICABLE LAW

An individual is considered disabled for purposes of disability benefits if he or she is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)–(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability. In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting him from performing basic work activities. *Id*. §§ 404.1520(c), 416.920(c). If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1. *Id*. §§ 404.1520(d), 416.920(d). If not, in the Fourth Step, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the

impairment or various limitations to perform his past work. *Id*. §§ 404.1520(f), 416.920(f). If not, in Step Five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. *Id*. §§ 404.1520(g), 416.920(g). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

## V. DISCUSSION

Plaintiff contends that the ALJ erred in assessing Plaintiff's RFC because the medical evidence, which now includes Dr. Najafi's July 31, 2014 medical record submitted to the Appeals Council following the ALJ's decision, citing *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157 (9th Cir. 2012), establishes that the RFC findings lack substantial evidence. (Doc. 11 at 8–9.) Plaintiff also asserts that the ALJ erred in interpreting Plaintiff's EMG and MRI evidence "on her own without the help of a medical expert." (*Id*. at 9.) The Commissioner contends that the ALJ's RFC findings were supported by substantial evidence, and that the ALJ had no duty to further develop the record. (Doc. 12 at 7–9.)

### A. The July 31, 2014 Medical Record Does Not Render the ALJ's RFC Findings Unsupported by Substantial Evidence.

#### 1. Legal Standard

The RFC is the "maximum degree to which [a plaintiff] retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. 404, Subpt. P, App. 2 § 200(c). It is an administrative decision as to the most a plaintiff can do, despite limitations. SSR 96–8p. The ALJ must assess all of the relevant evidence, including evidence regarding symptoms that are not severe, to determine if the claimant retains the ability to work on a "regular and continuing basis," *e.g.*, eight hours a day, five days a week. *Reddick v. Chater*, 157 F.3d 715, 724 (9th Cir. 1998); *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995); SSR 96–8p. The RFC assessment must be based on all of the relevant evidence in the case record, such as: medical history; the effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (*e.g.*, side effects of medication); reports of daily activities; lay activities; recorded

9

observations; medical source statements; effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from work attempts; need for structured living environment; and work evaluations. SSR 96–8p.

### 2. The July 31, 2014 Report Does Not Necessitate a Reevaluation of Plaintiff's RFC.

"[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence" *Brewes,* 682 F.3d at 1163 (expressly adopting *Ramirez v. Shalala,* 8 F.3d 1449, 1452 (9th Cir. 1993)). *See also Taylor v. Commissioner,* 659 F.3d 1228, 1232 (2011) (courts may consider evidence presented for the first time to the Appeals Council "to determine whether, in light of the record as a whole, the ALJ's decision was supported by substantial evidence and was free of legal error"); *Penny v. Sullivan,* 2 F.3d 953, 957 n.7 (9th Cir. 1993) ("the Appeals Council considered this information and it became part of the record we are required to review as a whole"); *see generally* 20 C.F.R. §§ 404.970(b), 416.1470(b). Thus, in light of *Brewes*, this Court will consider Dr. Najafi's July 31, 2014 report that Plaintiff submitted to the Appeals Council, and which the Appeals Council incorporated into the record (AR 5–6), in determining whether substantial evidence supports the ALJ's decision.[6]

Dr. Najafi's impression was that Plaintiff had spondylolisthesis at L5-S1 and bilateral nerve root impingement due to spondylolisthesis and microinstability, and recommended a transforaminal lumbar interbody fusion at L5-S1. (AR 530.) Plaintiff asserts that Dr. Najafi's

---

[6] Plaintiff neither appears to urge consideration of, nor does the Court consider, Plaintiff's October 2014 surgical records in determining whether the ALJ's RFC findings were supported by substantial evidence. These records, which the Appeal Council "looked at" but rejected because they did not relate to the period under review (*see* AR 2), are not part of the record that the Court must, as a matter of law, consider when determining if substantial evidence supports the denial of benefits under *Brewes*. *See Smith v. Berryhill*, No. 16-CV-03934-SI, 2017 WL 993072, at *13 (N.D. Cal. Mar. 15, 2017) (refusing to consider records that did not involve "evaluations, treatment, or other contact with plaintiff during the period prior to the ALJ's February 2015 decision," distinguishing *Brewes*). The Court notes that Plaintiff does not argue in his opening or reply brief that this Court should reopen the record because the October 2014 surgical record warrants a remand under "Sentence Six" of 42 U.S.C. § 405(g). However, to the extent that Plaintiff's request for relief could be construed as seeking remand under Sentence Six, Plaintiff has not "demonstrate[d] that there is a 'reasonable possibility' that the new evidence would have changed the outcome of the administrative hearing." *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001) (quoting *Booz v. Sec. of Health & Human Servs.*, 734 F.2d 1378, 1380–81 (9th Cir. 1983)).

assessment "illustrates the severity of [Plaintiff's] back problem, which needed surgery." (Doc. 11 at 9.) Dr. Najafi's evaluation does not, however, contain a clinical assessment of any limitations associated with Plaintiff's low back condition. (*See* AR 529–31.) Moreover, neurologist Dr. Suri's clinical findings pertaining to Plaintiff's low back also noted likely lumbar spondylosis (*see* AR 508), similar to Dr. Najafi. Further, Dr. Najafi's diagnosis of "spondylolisthesis at L5-S1 and bilateral nerve root impingement due to spondylolisthesis and microinstability," merely repeats the findings from the May 20, 2014 MRI, which showed "bilateral neural foraminal narrowing with nerve root impingement seen at L5-S1 with a grade I spondylolisthesis," "[f]actet hypertrophy . . . bilaterally with facet effusion seen mostly on the left side indicating microinstability." (AR 530). Thus, Dr. Najafi's report was essentially identical to the clinical findings and diagnostic testing in the record before the ALJ, and Plaintiff has not shown that there were any additional functional limitations caused by his low back impairment(s) that were indicated in Dr. Najafi's assessment. *See Medina v. Colvin*, No. 1:13-CV-00664-SKO, 2014 WL 1922541, at *9 (E.D. Cal. May 14, 2014); *Santos v. Colvin*, No. CV 13–00967 RZ, 2014 WL 241993, at *2 (C.D. Cal. Jan. 21, 2014) (refusing to remand for further consideration by the ALJ where the newly-admitted evidence "differed little from what was in the record already."). Finally, the portions of Dr. Najafi's report that are based on Plaintiff's subjective complaints (*see* AR 529) are not persuasive evidence of Plaintiff's disability, as the ALJ discounted Plaintiff's credibility as to his subjective complaints (AR 27, 29)—a finding not challenged here. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (a treating physician's opinion is properly rejected if based on discounted subjective complaints); *Tonapetyan v. Halter*, 242 F.3d 1144, 1148-49 (9th Cir. 2001.) In sum, the ALJ's analysis is not undermined by Dr. Najafi's July 31, 2014 report and remains supported by substantial evidence in the record. Accordingly, remand for consideration of Dr. Najafi's findings is unwarranted.

**B.     The ALJ Did Not Err in Its Consideration of Plaintiff's EMG and MRI Evidence.**

Plaintiff contends that the ALJ interpreted the May 2014 EMG and MRI results "on her own and without the help of a medical expert," and instead "should have utilized the services of a medical expert" in fulfillment of the ALJ's "affirmative obligation to fully and fairly develop the

1 record." (Doc. 11 at 9–10.) The record, however, belies Plaintiff's assertion. It is well-settled
2 that an ALJ may not substitute her own medical judgment for that of a physician. *See Pietrunti v.*
3 *Dir., Office of Workers' Comp. Programs*, 119 F.3d 1035, 1042 (2d Cir. 1997) ("an ALJ cannot
4 arbitrarily substitute his own judgment for competent medical evidence") (internal quotations and
5 citation omitted); *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("But judges, including
6 administrative law judges of the Social Security Administration, must be careful not to succumb
7 to the temptation to play doctor."); *Kemp v. Bowen*, 816 F.2d 1469, 1476 (10th Cir. 1987)
8 ("While the ALJ is authorized to make a final decision concerning disability, he cannot interpose
9 his own 'medical expertise' over that of a physician, especially when that physician is the regular
10 treating doctor for the disability applicant.") (citations omitted); *Ferguson v. Schweiker*, 765 F.2d
11 31, 37 (3d Cir. 1985) ("an ALJ is not free to set his own expertise against that of a physician who
12 presents competent evidence"). That, however, was not the case here.

13       In concluding that the May 7, 2014 EMG and May 20, 2014 MRI evidence supported
14 "greater limitation[s]" than those assessed by consultative examiner Dr. Wagner and by non-
15 examining consultants Drs. Frye and Frankel (whose examination and review predated the
16 diagnostic testing) (AR 28), the ALJ correctly recounted, nearly verbatim, the impressions of
17 neurologist Dr. Suri, who performed the EMG testing (AR 505-07) and of radiologist Dr. Ginier,
18 who reviewed the MRI (AR 511–12). (*See* AR 28.) Her discussion of these diagnostic testing
19 results is consistent with the record and not a product of her lay opinion. *See Saheed v. Colvin*,
20 No. 1:15-CV-00848-SMS, 2016 WL 6522742, at *5–6 (E.D. Cal. Nov. 3, 2016). Moreover, an
21 ALJ's duty to develop the record further is triggered only when the record contains ambiguous
22 evidence or is inadequate to allow for proper evaluation of the evidence. *Mayes,* 276 F.3d at
23 459–60 (citing *Tonapetyan,* 242 F.3d at 1150). Here, the EMG and MRI records were not
24 ambiguous and the record was not inadequate. Dr. Suri noted that Plaintiff's low back pain was
25 "suggestive of a left greater than right L5-S1 lumbosacral radiculopathy" and likely caused by
26 "lumbar spondylosis" (AR 524), which was what both the EMG and MRI results showed (AR
27 511, 521.). *See Pound v. Astrue,* No. EDCV 11–2039–JPR, 2012 WL 4513638, at *8 (C.D. Cal.
28 Oct. 2, 2012).

As the ALJ noted, the record did not contain any opinions from treating or examining physicians indicating that Plaintiff is disabled or even has limitations greater than those determined in his decision. (AR 29.) None of Plaintiff's treating doctors recommended restrictions on Plaintiff's ability to work. While Plaintiff obviously disagrees with the ALJ's assessment of the EMG and MRI reports, he fails to articulate exactly what medical evidence supports his belief that those reports show greater limitations than those found by the ALJ. As such, the Court finds the ALJ's assessment of the EMG and MRI reports is not grounds for reversal.

## VI. CONCLUSION AND ORDER

After consideration of Plaintiff's and Defendant's briefs and a thorough review of the record, the Court finds that the ALJ's decision is supported by substantial evidence and is therefore AFFIRMED. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security, and against Plaintiff.

IT IS SO ORDERED.

Dated: **August 4, 2017**  /s/ *Sheila K. Oberto*
UNITED STATES MAGISTRATE JUDGE